IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM TUDUJ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEVEN NEWBOLD, KIMBERLY )<br>BUTLER, HARRY GEORGE HENDERSON, )<br>DDS, DR. CRAIG ASSIELMEIER, and JOHN )<br>R. BALDWIN, )<br>)<br>Defendants. ) | Case No. 3:15-cv-1294-NJR-DGW |

# REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motions for Summary Judgment on the issue of exhaustion filed by Defendants Newbold, Baldwin, Butler, and Henderson, be **DENIED** (Docs. 40 and 45), and that the Court adopt the following findings of fact and conclusions of law.

## INTRODUCTION

In an amended complaint filed on March 30, 2016 pursuant to 42 U.S.C. § 1983 (Doc. 16), Plaintiff, an inmate incarcerated at the Menard Correctional Center, alleges that he was denied dental care and, as a result, was subjected to unnecessary tooth extraction. Plaintiff

alleges that he has been without adequate dental care for 8 years and that the only dental care that is provided is tooth extraction – he has been refused cavity fillings and root canals to resolve his dental needs. Plaintiff is suing three dentists, Dr. Henderson, Dr. Newbold, and Dr. Asselmeier for deliberate indifference along with Illinois Department of Corrections Director Baldwin and Warden Butler for implementing an unconstitutional policy and practice regarding dental care. Thus, Plaintiff is proceeding on one count of deliberate indifference in violation of the Eighth Amendment against Drs. Newbold, Henderson, and Assielmeier and a second count alleging an unconstitutional policy or practice of refusing all dental care except tooth extraction against Director Baldwin and Warden Butler (Doc. 18).

All Defendants, except for Dr. Assielmeier[1], seek summary judgment on the issue of failure to exhaust administrative remedies (Docs. 40 and 45). Dr. Newbold argues that while Plaintiff filed numerous grievances about dental care, they were rejected by the Administrative Review Board as procedurally deficient or failed to name or assert any claim as to the care he provided. The remaining Defendants, Dr. Henderson, Director Baldwin, and Warden Butler, also note that Plaintiff filed many grievances but that none of them were complete or fully exhausted. A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on August 3, 2017 in which the parties appeared by counsel and Plaintiff appeared by video-conference (Doc. 61).

### FINDINGS OF FACT

In his amended complaint, Plaintiff stated that he was seen by Dr. Henderson on December 24, 2013, that he was seen by Dr. Newbold from January 13, 2014 to September 9, 2014, and that he was first seen by Dr. Assielmeier on June 18, 2015 (Doc. 16). At the hearing,

---

[1] Dr. Assielmeier withdrew his affirmative defense of failure to exhaust administrative remedies on March 1, 2017 (Doc. 43).

Plaintiff argued that he did the best that he could in filing and appealing grievances. He stated that at times, his grievances were intercepted by his counselor and not forwarded to the grievance officer and that he was not provided various forms. Not all grievance submitted by Defendants are relevant to these proceedings. Only those that are relevant, or may be relevant, are addressed below.

It appears that Plaintiff first grieved his dental issues in a June 28, 2013 grievance in which he stated that there was a policy to extract teeth rather than fill them (Doc. 41-1, p. 77-78). The grievance does not contain any institutional responses. In a grievance dated August 12, 2013 (Doc. 41-1, p. 79-80), Plaintiff sought a response to his previous grievance which he said he submitted to the counselor. In an emergency grievance submitted on October 27, 2013, Plaintiff noted the lack of response to the June 28 grievance and sought dental care to avoid losing three additional teeth (Doc. 48-3, p. 1). On November 6, 2013, emergency review was denied (*Id.*).

On a November 11, 2013 grievance,[2] Plaintiff stated that he never received a response to the June 28 grievance from his counselor, that he submitted that grievance and the August 12 grievance to the Administrative Review Board (ARB) (which did not respond), that he filed the October 27 emergency grievance which was denied, and that he was instructed to file a regular grievance, which he did (Doc. 41-1, pp. 82-83). This November 11 grievance appears to have been sent to the ARB (Plaintiff asks questions that only the ARB could answer) and to his counselor.

These four grievances were received by the ARB on December 9, 2013 (Doc. 41-1, p.

---

[2] Three of these grievance forms are in Spanish, those dated June 28, August 12, and November 11 – i.e. those to which no response was made. There is a handwritten notation that no English forms were available. There is no evidence that Plaintiff can read Spanish.

76). The ARB instructed Plaintiff to provide institutional responses, directed him to contact his counselor regarding these issues, and stated "records indicate grievance sent to healthcare by your counselor." In a January 2, 2014 memorandum from Angela Crain regarding the November 11, 2013 grievance, Plaintiff was informed that he was seen by dental on December 24, 2013 (by Dr. Henderson), that a January 2, 2014 appointment needed to be rescheduled, and that he should follow sick call procedures for additional care (Doc. 41-1, p. 75). Plaintiff submitted the grievances to the ARB a second time on March 18, 2014; they were again rejected because Plaintiff had not provided a grievance officer's response (Doc. 48-6, p. 1).

None of these grievances submitted in 2013 name any Defendant herein. However, Plaintiff does complain that there is a policy of only extracting teeth, that he was not offered fillings or other dental care, and that he would like other options that would save his teeth.

Beginning in the Summer of 2014, Plaintiff submitted another slew of grievances. In an undated memorandum, Dr. Newbold indicated that on June 5, 2014 he reviewed multiple grievances[3] regarding dental care and found that Plaintiff's dental needs were being managed appropriately (Doc. 48-7, p. 3). Only one grievance from 2015 has a grievance officer's, a Warden's and an ARB response. In this July 29, 2014 emergency grievance, Plaintiff stated that a tooth that was in need of a filling has now broken and that he needs to be scheduled for an extraction (Doc. 48-13, p. 7). The Warden expedited the matter as an emergency on August 6, 2014. A grievance officer indicated that Plaintiff did not request to be seen by a dentist but that he was scheduled for the upcoming Friday (after the grievance officer spoke to dental) thus rendering the grievance moot (Doc. 48-13, p. 8). The Warden concurred on August 8, 2014. Plaintiff appealed to the ARB which received the appeal on November 10, 2014 and rejected it

---

[3] It is unclear what grievances Dr. Newbold reviewed.

as untimely (Doc. 48-13, p. 3).

At the hearing, Plaintiff testified that he did not submit his appeal to the ARB until he was able to make copies of the grievances (for his records and to have proof of the grievances). In September 2014, Menard CC was subject to two lockdowns that made it impossible for him to go to the law library to make copies. After the lockdowns ended, he put in requests for the law library and made copies as soon as he was given permission to go to the law library. The Court credits this testimony. There is no evidence that Plaintiff was otherwise prevented from mailing documents to the ARB during this time period.

In an October 22, 2014 grievance, Plaintiff complained that a tooth was fractured by an outside dentist and that he required more treatment (Doc. 48-13, pp. 1-2). A counselor responded on November 6, 2014 and directed him to a November 5 memorandum from nursing supervisor Charlotte Miget (Doc. 48-14, p. 4). Parts of the memo are unreadable; however, the gist of it is that Dr. Newbold reviewed Plaintiff's care, that Plaintiff was evaluated on October 23, 2014, that he was scheduled for dental treatment, and that he was being properly treated.

Of note is a November 3, 2014 grievance directed to the grievance officer but that was returned to Plaintiff by his counselor as a "duplicate" within a couple of days (Doc. 48-14, p. 5). In this grievance, Plaintiff stated that after putting in multiple requests to see a dentist he was finally seen by Dr. Henderson who advised him, on October 23, 2014, that he would get a filling. However, no appointment for a filling was made. The grievance also names Dr. Newbold and talks about problems with a September 4, 2014 dental procedure. The November 3 grievance does restate what Plaintiff set forth in the October 22 grievance; however, the first was addressed to his counselor and the second was addressed to the grievance officer. It is unclear why the counselor did not just forward the grievance to the grievance officer or at least direct Plaintiff to

submit the October 22 grievance to the grievance officer.

The ARB received these three grievances (October 22, November 3, and November 14) on November 20, 2014 (Doc. 48-14, p. 1). Plaintiff was instructed to acquire institutional responses. And, there is a notation that the grievances were misdirected and that he should contact healthcare about his dental issues.

Beginning in the Summer of 2015, Plaintiff submitted additional grievances regarding his dental care. It is unnecessary to discuss these grievances with respect to the pending motions.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen*

*v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, which is not a model

of clarity, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." ILL. ADMIN. CODE TIT. 20, § 504.810(a).[4] The grievance must be filed with counselor, unless certain discrete issues are being grieved. *Id*. It must contain "factual details regarding each aspect of the offender's complaint" including who (or at least descriptive information), what, why, when, and where of the occurrence. *Id*. §504.810(c). If the complaint is not resolved through a counselor, the grievance may be considered by a grievance officer who must render a written recommendation to the Chief Administrative Officer ("CAO" – usually the Warden) within 2 months of receipt, "when reasonably feasible under the circumstances. *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may also file an emergency grievance that would be forwarded directly to the CAO. *Id*. § 504.840. If "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender," consideration of the grievance will be expedited and a response shall be made. *Id*. § 504.840(a) and (b). If the grievance is not considered on an emergency basis, "the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*. § 504.840(c).

An inmate may appeal the decision of the CAO to the Director of the Illinois Department of Corrections. The appeal must be in writing, must be directed to the Administrative Review Board (ARB), and must be received by the ARB within 30 days of the date of the CAO's response. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who

---

[4] The Code was amended on April 1, 2017.

shall review the same and make a final determination within 6 months of receipt of the appeal. *Id.* § 504.850(d) and (e).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

**<u>Count 1, Dr. Henderson:</u>**

As indicated above, in his first amended complaint, Plaintiff claimed that he saw Dr. Henderson on December 24, 2013, although he had complained about dental care previously and was told that the only treatment available was extraction (Doc. 16, p. 3). It is unclear from the pleadings or the documents submitted by the parties whether this was the only encounter Plaintiff had with Dr. Henderson or whether he was the dentist at Menard CC throughout 2013.[5] It is unlikely that Dr. Henderson only worked on December 24, 2013; it is more likely that he was the dentist at Menard CC for some time prior to that date. In any event, Dr. Henderson concedes

---

[5] And perhaps 2014 (Doc. 48-13, p. 2).

that Plaintiff's 2013 grievances covered general dental care but argues that they were not fully exhausted and they did not specifically name him. Defendant's arguments are not convincing.

In the June 28 grievance, to which Plaintiff did not receive a response (rendering the administrative process unavailable), Plaintiff stated that there was a policy of extracting teeth instead of filling or repairing them, that he already had lost two teeth, and that three additional teeth were in danger. In the August 12 grievance, again to which Plaintiff did not receive a response (rendering the administrative process unavailable), Plaintiff stated that he was denied a timely filling or repair and that the "dentist" told him that no treatment other than extraction would be offered. Unless Menard has a cadre of dentists on staff (and there is no evidence of that), Plaintiff could only have been seeking adequate dental care from his treating dentist, Dr. Henderson. In any event, by failing to respond to the grievance (or providing a form that Plaintiff could read),[6] Defendant may have waived any argument that it was procedurally deficient. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Plaintiff has exhausted his administrative remedies as to Dr. Henderson.

**Count 1, Dr. Newbold**

Dr. Newbold, who Plaintiff alleged he saw on January 13, 2014 and thereafter, makes the same arguments as Dr. Henderson: that Plaintiff either failed to name him or that he did not fully exhaust a grievance.

The July 29, 2014 emergency grievance, while it did not name Dr. Newbold, generally complains about dental care. This grievance, however, was not fully exhausted. Plaintiff states that he did not appeal this grievance to the ARB in a timely manner because he wanted to make

---

[6] Again, the June 28 grievance has instructions in Spanish. There is no evidence that Plaintiff is Spanish speaking. And, while the information contained in the grievance form is in the correct location, there is no evidence that Plaintiff was able to read the specific instructions contained on the grievance form.

copies and could only do so when called to the law library. The necessity of making copies of grievances at Menard CC seems reasonable to the Court: In this case alone, there are references to grievances that are not contained in the record, there are grievances to which no responses were made, and inmates are at the mercy of a recording system at the prison that is not reliable. The necessity of such copies also may be contained in the ARB's responses to Plaintiff's grievances (Doc. 48-8, p. 1) and in Defendants' arguments to the Court (Doc. 48, p. 7). However, the Seventh Circuit requires strict compliance with exhaustion procedures, including the timing of appeals. *See King v. McCarty*, 781 F.3d 8889, 893 (7th Cir. 2015). Making copies is not necessary to exhausting administrative remedies and no person at the jail affirmatively prevented Plaintiff from submitting a grievance appeal on time. The July 29 grievance was not fully exhausted.

The prison did, however, prevent Plaintiff from exhausting his administrative remedies as to the November 3, 2014 grievance. In this grievance, directed to the grievance officer, Plaintiff stated that he had concerns about certain aspects of his dental care (of which he informed Dr. Newbold), that he had a new fractured tooth for which no dental care had been provided, that he sought dental care on multiple occasions, and that he was not scheduled for an appointment as promised. Instead of the grievance going to the grievance officer, it was intercepted by the counselor who merely stated "duplicate grievance." While the current Code allows for "no merit grievances" to be denied, s*ee* ILL. ADMIN. CODE TIT. 20, § 504.830(a), the Code is silent on what Plaintiff should do when a counselor denies a grievance directed to the grievance officer.[7] As to

---

[7] In the version of the Code applicable to Plaintiff, he was only required to informally resolve his issue with the counselor (which he attempted to do with the October 23 grievance) and then was required to file a written grievance with the grievance officer, which is what Plaintiff appears to have done (having received no response from his counselor in 12 days). The grievance form itself directs Plaintiff to file with the grievance officer if "issue not resolved by counselor" – this

this grievance, which concerns Plaintiff's claims against Dr. Newbold, the process was rendered unavailable and Plaintiff is deemed to have exhausted his administrative remedies.

**Count 2, Director Baldwin and Warden Butler**

As indicated above, Plaintiff's June 28, 2013 grievance complained about a policy of teeth extraction over fillings and other care. While Plaintiff did not particularly name these two Defendants, they are the head administrative personnel who could be presumed to set policy in the prison. Because the June 28 grievance is deemed fully exhausted (as set forth above), and Plaintiff was not required to file multiple grievances about the same ongoing issue, *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013), Plaintiff has exhausted his administrative remedies as to these Defendants also.

is exactly what Plaintiff did.

**RECOMMENDATIONS**

For the foregoing reasons, it is RECOMMENDED that the Motions for Summary Judgment on the issue of exhaustion filed by Defendants Newbold, Baldwin, Butler, and Henderson, be **DENIED** (Docs. 40 and 45) and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 10, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**